991 F.2d 800
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Morris STRAUSS, Plaintiff/Appellee,
v.
David S. SULLIVAN, Defendant/Appellant.
 No. 91-3403.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 12, 1993.*
Decided April 15, 1993.
 
 Before POSNER, and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Morris Strauss sued David Sullivan after Sullivan refused to provide payment under a contract. Sullivan countered that Strauss had failed to fulfill certain conditions precedent. We affirm the district court's judgment in favor of Strauss, which was rendered after a bench trial.
 
 I. BACKGROUND
 
 2
 From 1971 to 1982, Sullivan, Strauss, and Isaac Oberndorfer jointly owned Winners Sports Service, Inc. (Winners), a company that distributed sports-related publications. After the three owners became enmeshed in a legal battle, Strauss and Oberndorfer agreed to sell Sullivan their interest in Winners and in two other businesses. In exchange, Sullivan provided a cash down payment and promissory notes to both Strauss and Oberndorfer. The notes were executed on November 29, 1982, along with the parties' Asset and Partnership Interest Purchase Agreement ("the Agreement"). The Agreement provided Sullivan several warranties from Strauss and Oberndorfer, including a promise that the financial condition of the business had not changed between May 31, 1982 and November 29, 1982. The Agreement also contained several "Conditions to Obligations of Sullivan," including (1) "delivery of those items required to be delivered ...", (2) the stability of Winners' financial condition, and (3) the truth of the warranties and representations. Sullivan was required to bring claims for breach of any covenant, agreement, representation, or warranty within two years of the closing.
 
 
 3
 By the Fall of 1983, Sullivan believed that Strauss and Oberndorfer had breached certain provisions of the contract, but he nonetheless made an installment payment on their notes. On November 26, 1984, almost two years after the Agreement was signed, Sullivan informed Strauss that the "transfer of the Winners assets was defective in certain respects." Sullivan agreed to withhold his claims at that time if Strauss would extend the limitation period from November 29, 1984 to April 15, 1985. Strauss agreed to extend both the limitation period and the payment date to April 15.
 
 
 4
 Sullivan never brought a claim before April 15, 1985.[1] Instead, he attempted to make a public offering of Winners' holding company. When the offering failed, Sullivan decided to default on the two promissory notes.
 
 
 5
 In 1989, Strauss and Oberndorfer sued Sullivan for payment on the notes. Oberndorfer voluntarily dismissed his suit, but Strauss proceeded to a bench trial. At trial, Sullivan claimed that Strauss's breaches excused any performance under the contract. Strauss questioned, among other things, Sullivan's ability to claim the breach of a condition precedent when he had owned the company for several years and had made a payment on the note. After hearing the parties' evidence, the district court entered judgment in favor of Strauss.
 
 II. ANALYSIS
 
 6
 Sullivan urges this court to construe the promissory note along with the contract under Section 3-119 of the Illinois Uniform Commercial Code (UCC). Ill.Rev.Stat. ch. 26, para. 3-119. We note, first, that Article 3 of the UCC does not apply here because Sullivan's promissory note is not a negotiable instrument. See Shatz v. Dunn, 309 N.E.2d 702 (Ill.App.1974). A negotiable instrument must be "payable on demand or at a definite time." Ill.Rev.Stat. ch. 26, para. 3-104. A note is payable at a definite time if it:
 
 
 7
 is payable on the elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of (i) prepayment, (ii) acceleration, (iii) extension at the option of the holder, or (iv) extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.
 
 
 8
 Ill.Rev.Stat. ch. 26, para. 3-108. Instead of specifying a definite time of payment, Sullivan's note allows indefinite extension. The note states:
 
 
 9
 Notwithstanding anything the contrary contained herein, or in the Security Agreement, at such time as not less than Three Hundred Twenty-Five Dollars ($368,825) of the combined principal amount of the Notes [both the note to Strauss and the note to Oberndorfer] has been paid under the Agreement, the Holder shall no longer have recourse to the undersigned for further payment hereunder. All such further payment under the Notes shall be derived from, and in the aggregate annually be limited to, ten percent (10%) of the gross revenues attributable to any commercial enterprise using the mailing list (or any mailing list which may evolve from such mailing list) acquired from Winners Sports Service, Inc. under the Agreement during the period such revenues are the basis for payments under the Notes, provided that, if the mailing list is rented to a commercial enterprise in which Sullivan does not have an interest the amount of payment with respect to same shall be 50% thereof. Payments from the obligated enterprises shall be made annually at the times required hereunder. Any amount remaining unpaid on any payment date due to insufficient revenues of the obligated enterprise shall not be waived, but shall remain cumulatively due an payable in subsequent years until paid in full.
 
 
 10
 We must, therefore, analyze Sullivan's claims under Illinois common law, which requires courts to construe all contemporaneous documents together. McDonald's Corp. v. Butler Co., 511 N.E.2d 912, 917 (Ill.App.1987). A promissory note executed contemporaneously with a contract acts as tangible proof of the indebtedness under the contract, and it is limited by the provisions of that contract, including conditions precedent.[2]
 
 
 11
 A party may, however, waive conditions precedent, either by express waiver or by any conduct indicating that strict performance under the contract is not necessary. Whalen v. K-Mart Corp., 519 N.E.2d 991, 993 (Ill.App.1988), appeal denied, 526 N.E.2d 841 (1988). The party may not enforce his contractual rights after lulling the other party into believing that strict performance is not required. Id. A party, however, may only waive defects of which he has either actual knowledge or constructive knowledge. The party has constructive knowledge of all defects that reasonable diligence would have revealed. Id. at 995; MBC, Inc. v. Space Center Minnesota, Inc., 532 N.E.2d 255, 259 (Ill.App.1988).
 
 
 12
 Sullivan seeks to avoid payment on the promissory note by claiming that his obligations are subject to conditions precedent, including the following conditions:
 
 
 13
 The obligations of Sullivan hereunder shall be subject to the delivery of those items required to be delivered by Winners, Oberndorfer and Strauss at the Closing and to the conditions that:
 
 
 14
 ... (b) There shall have been no substantial adverse changes in the condition, financial, business or otherwise of Winners from May 31, 1982 and until the Closing, except for changes resulting from those changes in the usual and ordinary course of the business, and between such dates the business and assets of Winners shall not have been materially adversely affected as a result of any fire, explosion, earthquake, flood, accident, strike, lockout, taking over of any such assets by any governmental authorities, riot, activities of armed forces, or act of God or others, except for the exceptions described in paragraphs 7.e.3 hereof.
 
 
 15
 (c) Sullivan shall have had immediate and continuing access to the information described in Section 9(a) and the properties and assets being transferred hereunder, shall in his sole discretion be satisfied with the quality and nature of such properties and assets and shall have received a copy of or safeguarded to his satisfaction the customer lists and list of current subscribers in mailing list form being transferred hereunder.
 
 
 16
 (d) All schedules to be attached hereto have been furnished and attached hereto and are not inconsistent with any of Winners', Oberndorfer's and Strauss' representations or warranties hereunder.[3]
 
 
 17
 Although Strauss arguably breached several of these conditions, Sullivan has already made a cash down payment and an installment payment under the contract. These payments may act as a waiver if Sullivan knew about Strauss's breach before he made them.
 
 
 18
 Sullivan denies that he knew most of the facts relevant to Winners' worth, but as a shareholder and formerly active director with contractual right to search the company's records, Sullivan knew, or could easily have discovered, most of the problems before closing. The most evident problems include: the age and make up of Winners' mailing list, the appropriation of the list and the suit against Mike Lasky, the number of subscribers in 1982, and the quality of the 1982 predictions. By the fall of 1983, Sullivan should have known about all the relevant problems, including the drop in 1983 subscriptions, the missing property, and the blank October 1982 issue. Any failure to discover these obvious problems stemmed only from Sullivan's lack of diligence.
 
 
 19
 By providing the December, 1983 payment despite these known defects, Sullivan waived the conditions precedent to payment. After the waiver, Sullivan could not revive the conditions by subsequent letters or oral conversations. A party that lulls another into complacency cannot later assert his rights.
 
 
 20
 Sullivan raises several other issues, most of which are irrelevant in light of our disposition here. We will, however, briefly address the claim that Judge Hart treated Sullivan and Strauss inequitably. This court has reviewed the trial transcript and has seen no evidence of bias. We believe that Judge Hart admirably conducted this trial between the two contentious pro se litigants.
 
 
 21
 The district court's judgment is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 This court gives the word "claim" its plain legal meaning. See Johnstowne Centre Partnership v. Chin, 458 N.E.2d 480, 482 (Ill.1983). Black's Law Dictionary defines "claim" as:
 To demand as one's own or as one's right; to assert; to urge; to insist. Cause of action. Means by or through which claimant obtains possession for enjoyment of privilege or thing....
 Although Sullivan informed Strauss of certain problems under the contract, he never invoked his legal rights. See Defendant's Answers. He did not, for example, file a lawsuit or inform Strauss that he was invoking the conditions precedent. See id.
 
 
 [2]
 A "condition precedent" is a contractual obligation that must be fulfilled before the other party assumes any duties under the contract. Community Convalescent Center, Inc. v. First Interstate Mortgage Co., 537 N.E.2d 1162, 1164 (Ill.App.), appeal denied, 545 N.E.2d 106 (1989)
 
 
 [3]
 The contract also contains another condition stating that:
 (a) The representations and warranties made by Winners, Oberndorfer and Strauss herein shall be true at the Closing as though such representations and warranties were made at that time, and all of the terms and conditions of this Agreement to be performed and complied with by Winners, Oberndorfer and Strauss shall have been performed and complied with by Winners, Oberndorfer and Strauss shall have been complied with, provided however, that Sullivan may waive any such condition by a statement in writing to that effect delivered to Winners, Oberndorfer, and Strauss.
 Any right to assert this provision as a condition precedent to performance is barred by a limitation provision stating "... All claims for breach of any covenant, agreement, representation or warranty herein, shall be made on or before two (2) years from Closing [later extended to April 15, 1985], and shall not exceed the purchase price." To comply with this provision, Sullivan should have invoked his legal rights before the parties' April 15, 1985 cut-off date. Sullivan could have done so either by filing suit or by officially informing Strauss of his decision to invoke the condition precedent. Because Sullivan did neither, he failed to make his "claims for breach" of the warranty within the time period specified in the provision.