BUSEY BANK, Plaintiff-Appellee, v. CHARLES SALYARDS *et al.*, Defendants
(Farmers Merchants National Bank, Garnishee Defendant-Appellant).

Fourth District   No. 4—98—0595

Opinion filed April 15, 1999.

MYERSCOUGH, J., dissenting.

Steven L. Blakely, of Acton & Snyder, of Danville, for appellant.

John F. Bramfeld, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:
Garnishee-defendant Farmers Merchants National Bank (Farmers Merchants) appeals from an order of the circuit court of Champaign

County finding it in indirect civil contempt for failing to comply with the trial court's turnover order and further ordering Farmers Merchants to pay plaintiff Busey Bank (Busey) $18,046.99, plus interest. The issues are whether (1) the finding of contempt was against the manifest weight of the evidence or improper as a matter of law and (2) the awarding of "prejudgment" interest was improper. We affirm.

The chronology of events was stipulated. On January 13, 1997, the trial court entered judgment for Busey Bank and against Charles and Marlene Salyards (Salyards) in the amount of $33,787.80, plus interest. On April 30, 1997, a nonwage garnishment summons was served on Farmers Merchants. Farmers Merchants answered that it held $2,573 in a savings account and $18,046.99 in an individual retirement account (IRA) for the Salyards. Farmers Merchants took $2,368.84 as an offset on a loan it had with the Salyards, leaving $18,252.11 in its possession. On May 27, 1997, the trial court entered a turnover order requiring Farmers Merchants to pay Busey Bank the proceeds of the IRA, with notice mailed to Farmers Merchants on May 29, 1997. On May 30, 1997, the Salyards filed a bankruptcy petition in the United States Bankruptcy Court for the District of Arizona (case No. 97—07186—PHX—RGM). In the initial bankruptcy filing, the Salyards did not disclose the IRA or claim an exemption for it. On July 16, 1997, Busey Bank's attorney informed Farmers Merchants by letter that it remained owner of the garnisheed funds and forbade disbursement to anyone else. On July 17, 1997, Farmers Merchants forwarded that demand to the Salyards' attorney, and on July 23, 1997, the Salyards amended the bankruptcy schedule to claim an exemption for the IRA. On August 4, 1997, the Salyards' attorney informed Busey Bank of the amendment to the bankruptcy schedule and the claimed exemption. On November 21, 1997, the bankruptcy court avoided the turnover order. Thereafter, Farmers Merchants relinquished the IRA funds to the Salyards, less $4,500 applied to payment of a car loan with Farmers Merchants.

On January 29, 1998, Busey Bank filed a motion for rule to show cause seeking a finding of contempt and a judgment against Farmers Merchants. After considering the stipulated facts and the arguments and memoranda of the parties, the trial court entered a written order on August 8, 1998, finding (1) Farmers Merchants received and was aware of the import of the turnover order of May 27, 1997; (2) Farmers Merchants had the ability to make the payment pursuant to the turnover order; and (3) Farmers Merchants' failure to make the payment as required by the turnover order was wilful and contumacious. Farmers Merchants was allowed to purge its indirect civil contempt by

paying Busey Bank, within seven days, $18,046.99 plus "post judgment interest from June 3, 1997, to the date of mailing or otherwise delivering the payment at the rate of 9% per annum[,] which this Court calculates to be $4.449 per day."

■ Farmers Merchants concedes the refusal to obey a court is civil contempt, and when the refusal takes place out of the presence of the court, it is indirect civil contempt. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 48, 558 N.E.2d 404, 418-19 (1990); *In re Estate of Miller*, 197 Ill. App. 3d 67, 73, 556 N.E.2d 568, 572 (1990). Farmers Merchants further concedes that persons subject to the order of a court having jurisdiction of the subject matter and the parties must obey the order until it is reversed by a reviewing court or set aside or modified by the issuing court (*People v. Graves*, 74 Ill. 2d 279, 284-85, 384 N.E.2d 1311, 1314 (1979), quoting *Faris v. Faris*, 35 Ill. 2d 305, 309, 220 N.E.2d 210, 212 (1966)) even if it was erroneous (*Schallau v. City of Northlake*, 82 Ill. App. 3d 456, 467, 403 N.E.2d 266, 274 (1979)). An order for the payment of a specific fund in the possession or under the control of the party charged with turning it over is enforceable by contempt proceedings. See *Tudor v. Firebaugh*, 364 Ill. 283, 287-89, 4 N.E.2d 393, 395-96 (1936); *Tegtmeyer v. Tegtmeyer*, 292 Ill. App. 434, 441-43, 11 N.E.2d 657, 660-63 (1937). Farmers Merchants does not challenge the circuit court's jurisdiction to enter the turnover order or the order of contempt.

Whether a party has committed indirect civil contempt is a question of fact for the trial court, and the trial court's determination will not be overturned on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Scott*, 286 Ill. App. 3d 1056, 1059, 678 N.E.2d 1, 3 (1996). When the facts are not in dispute, their legal effect may be a question of law, which this court considers *de novo* (*Gay v. Dunlap*, 279 Ill. App. 3d 140, 145, 664 N.E.2d 88, 92 (1996)), but if divergent inferences could have been drawn from the undisputed facts, a question of fact remained to be determined and the manifest weight of the evidence standard is applied on review (*Metropolitan Water Reclamation District v. Industrial Comm'n*, 272 Ill. App. 3d 732, 734, 650 N.E.2d 671, 673 (1995)).

Farmers Merchants argues the turnover order was a judicial lien, and Busey Bank argues the turnover order transferred ownership of the funds to it. It is not necessary to resolve that dispute if (1) a valid order was in effect; and (2) Farmers Merchants had possession of the funds, was capable of complying with the order, and did not. Under such circumstances, regardless of what standard of review applies, Farmers Merchants would be in indirect civil contempt of court.

Farmers Merchants argues the finding of contempt was improper

because (1) the IRA was exempt from creditors (735 ILCS 5/12—1006 (West 1996)) and (2) the trial court failed to give full faith and credit to the order of the bankruptcy court avoiding the turnover order. As for the belatedly asserted exemption, neither Farmers Merchants nor the Salyards asserted that exemption in the garnishment proceeding and neither appealed the turnover order.

■ ■ Imposition of a sanction for contempt is a final order for purposes of appeal since the contempt proceeding is collateral to and independent of the case in which the contempt arises. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 216, 642 N.E.2d 1264, 1269 (1994), quoting *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172, 429 N.E.2d 483, 486 (1981). When the contempt order results from a violation of an interlocutory order, the validity of the interlocutory order may be called into question in an appeal from the order of the contempt. *Almgren*, 162 Ill. 2d at 216, 642 N.E.2d at 1269. However, the order of contempt in the case at bar arose from the failure to comply with an order that was final for purposes of appeal but which was not appealed. In postjudgment garnishment proceedings, orders that terminate all or part of the garnishment proceeding are appealable pursuant to Supreme Court Rule 304(b)(4) (155 Ill. 2d R. 304(b)(4)). *In re Marriage of McElwee*, 230 Ill. App. 3d 714, 719, 595 N.E.2d 738, 741-42 (1992); *Peter Fischer Import Motors, Inc. v. Buckley*, 121 Ill. App. 3d 906, 910, 460 N.E.2d 346, 350 (1984). When a party has failed to take a timely appeal from an order that is final for purposes of appeal, the appellate court is without jurisdiction to consider the propriety of that earlier final order in an appeal from a subsequent order, even in the same case. *Bank of Ravenswood v. Maiorella*, 104 Ill. App. 3d 1072, 1074, 433 N.E.2d 1044, 1046 (1982). When an appeal has not been perfected, the judgment is *res judicata*. *In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985*, 228 Ill. App. 3d 719, 736, 593 N.E.2d 538, 550 (1991).

■ In this case, Farmers Merchants attempts to attack the turnover order in an appeal from an order entered in a subsequent, independent proceeding, to wit, the contempt proceeding. Since Farmers Merchants does not argue that the turnover order is void because the trial court was without jurisdiction (see *In re Application of the Cook County Collector*, 228 Ill. App. 3d at 731-32, 593 N.E.2d at 547), we do not consider whether that order was erroneous on the basis of the claimed exemption. Farmers Merchants may not collaterally attack the underlying final judgment in an appeal from an order of contempt based on the violation of that judgment. See *Cummings-Landau*

*Laundry Machinery Co. v. Koplin*, 386 Ill. 368, 383-86, 54 N.E.2d 462, 469-70 (1944).

We recognize that the bankruptcy court ultimately avoided the transfer that was the subject of the earlier judgment. However, that did not render the turnover order void at the time it was entered or any other time. Instead, it merely required a retransfer of the assets to the bankrupt estate.

■ When a debtor files for bankruptcy, all assets of the debtor, even if not listed on the schedule of assets, become property of the bankrupt estate (11 U.S.C. § 541 (1994); *Jeffrey v. Desmond*, 70 F.3d 183, 186 n.3 (1st Cir. 1995); *Vreugdenhill v. Navistar International Transportation Co.*, 950 F.2d 524, 526 (8th Cir. 1991)) regardless of where they are or who holds or controls them (1 D. Epstein, S. Nickles & J. White, Bankruptcy § 3—13, at 161 (1992) (hereinafter Bankruptcy)). Even exempt property is part of the bankrupt estate until the exemption is asserted. 1 Bankruptcy § 6—6, at 518. Once a bankruptcy petition is filed, there is an automatic stay that has a preclusive effect. The stay bars the continuation of a proceeding commenced prepetition, the enforcement of any judgment obtained prepetition, and any act to obtain estate property. 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3) (1994).

> "The stay bars garnishment in connection with a prepetition claim, and the garnishment of estate property, including property subject to a garnishment lien prepetition where the debtor was not divested of all interest in the property prepetition." 8A C.J.S. *Bankruptcy* § 69, at 76-77 (1988).

The stay applies to all entities and all cases. 1 Bankruptcy § 3—1, at 78.

The Busey Bank argues it owned the IRA prior to the filing of the bankruptcy petition, and Farmers Merchants argues Busey Bank only had a lien. This is an issue that should have been litigated in the bankruptcy proceeding. Its only relevance here is to the question of whether Farmers Merchants' failure to comply with the turnover order was wilful.

■ In a garnishment proceeding, the judgment against the garnishee is in favor of the judgment debtor, to whom the garnishee is indebted or for whom the garnishee holds property, for the use of the judgment creditor. 735 ILCS 5/12—711(d) (West 1996); *In re Marriage of Stevens*, 292 Ill. App. 3d 994, 1002, 687 N.E.2d 165, 171 (1997) (strict compliance with the terminology employed in this section may be waived if not objected to). The judgment is enforceable as in other civil cases, and it discharges the garnishee from all claims on this property by the judgment debtor. 735 ILCS 5/12—712 (West 1996).

Bankruptcy courts have recognized that, under Illinois law, the turnover order is a transfer divesting the debtor of any interest to the property. *In re Dean*, 80 B.R. 932, 934 (Bankr. C.D. Ill. 1989); *In re Nealis*, 52 B.R. 329, 333 (Bankr. N.D. Ill. 1985) (however, garnisheed wages are not deemed transferred until earned); see *In re T.M. Sweeney & Sons, LTL Services, Inc.*, 120 B.R. 101, 105 (Bankr. N.D. Ill. 1990) (citation summons creates a lien but transfer does not occur until turnover order is entered). Therefore, when the turnover order was entered in this case, the Salyards no longer had an interest in the IRA. We recognize that a judgment debtor may use the power of the bankruptcy trustee to avoid a transfer in order to claim an exemption where the debtor did not voluntarily transfer the property. 11 U.S.C. §§ 522(g), (h) (1994); 8A C.J.S. *Bankruptcy* § 180, at 173-74 (1988). Generally, the bankruptcy trustee has avoidance power. Avoidance does not occur by operation of law. It is discretionary with the trustee. 1 Bankruptcy § 6—2, at 498-99. The debtor has limited avoidance power where there has been an involuntary transfer of property that had not been concealed and would have been exempt had the property not been transferred. *Nealis*, 52 B.R. at 331; 2 Bankruptcy § 8—23, at 531-32. If the property can be exempted, the debtor can avoid a preferential transfer even if he did not have an interest in the property at the commencement of the bankruptcy proceeding. *Nealis*, 52 B.R. at 331. However, while the debtor's avoidance power is usually exercised less formally than the trustee's avoidance power, the debtor must still file a motion in the bankruptcy proceeding. 2 Bankruptcy § 8—29, at 567-70. When the transfer is avoided, the interest in the property recovered is included in the bankrupt estate. 11 U.S.C. § 541(a)(3) (1994); 8A C.J.S. *Bankruptcy* § 106, at 106 (1988). The bankruptcy court could have as easily ordered Busey Bank to release the asset, if exempt, as it could have directed Farmers Merchants to do the same. The fact the bankruptcy court ultimately avoided the transfer did not excuse Farmers Merchants from complying with the turnover order.

■ Valid judgments of federal courts must be accorded full faith and credit. U.S. Const., art. IV, § 1; 28 U.S.C. § 1738 (1994); *TransAmerica Trade Co. v. McCollum Aviation, Inc.*, 98 Ill. App. 3d 430, 432, 424 N.E.2d 740, 742 (1981). The parties do not discuss whether the bankruptcy court's order of avoidance was an interlocutory order or a final judgment or what significance that may have for determining the applicability of the full faith and credit doctrine, if any. In any event, the bankruptcy court's decision was not denied full faith and credit. The trial court in the contempt proceeding did not order Farmers Merchants to turn over the IRA account. Instead, the court imposed a sanction for contempt. Nothing in the contempt judgment contradicted the bankruptcy court's order.

■ The final issue is whether the trial court's award of postjudgment interest was proper. Busey Bank's only response to the issue is that Farmers Merchants waived the issue by failing to timely file its case authority on this issue in the trial court as directed by that court. Farmers Merchants has not filed a reply brief responding to the argument of waiver.

On June 25, 1998, the trial court directed Busey Bank to provide case authority on the interest issue within seven days and Farmers Merchants to respond within seven days of receipt. On June 29, 1998, Busey Bank's attorney sent a letter to the trial judge, with a copy to opposing counsel. On August 10, 1998, the trial court entered the written order in the contempt proceeding setting interest at 9% per annum from June 3, 1997, one week after the entry of the turnover order, as requested by Busey Bank. The docket entry of August 10, 1998, indicated Farmers Merchants never filed a response to Busey Bank's authority. On August 12, 1998, Farmers Merchants filed an objection to the interest requested by Busey Bank, which the trial court found to be untimely. Farmers Merchants did not file a postjudgment motion for reconsideration. See 735 ILCS 5/2—1203(a) (West 1996).

The failure to respond to arguments in the trial court may be deemed a waiver of the issue. *MAJS Investment, Inc. v. Albany Bank & Trust Co.*, 175 Ill. App. 3d 478, 482, 529 N.E.2d 1035, 1038 (1988). However, Farmers Merchants' argument is that the trial court was without statutory authority to award "prejudgment" interest.

> "A void order or judgment is one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to make or enter the order involved. (*People v. Wade* (1987), 116 Ill. 2d 1, 5; *Barnard v. Michael* (1945), 392 Ill. 130.) A void order may be attacked, either directly or collaterally, at any time. *Wade*, 116 Ill. 2d at 5; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112." *In re Estate of Steinfeld*, 158 Ill. 2d 1, 12, 630 N.E.2d 801, 806 (1994).

Therefore, to the extent Farmers Merchants argues the trial court's order exceeded that court's authority, we consider the issue. Although Busey Bank has not addressed the issue on the merits, we decline to summarily reverse. The issue will be considered because the record is simple and the claimed error may be easily addressed without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

■ Farmers Merchants argues that the trial court actually awarded "prejudgment" interest, apparently concluding that the judgment at issue was the judgment in the contempt proceeding. Farmers

Merchants does not contest the trial court's authority to include in its sanction interest to which Busey Bank would be entitled by reason of Farmers Merchants' wilful failure to comply with an earlier judgment of the court. As has already been stated, the garnishment order in this case was a final judgment enforceable as in any civil case. Interest may be awarded on every judgment, except those arising by operation of law from child support orders, at a rate set in section 2—1303 of the Code of Civil Procedure (735 ILCS 5/12—109, 2—1303 (West 1996)).

Farmers Merchants does not argue that the trial court incorrectly set the time period during which interest should have accrued, *i.e.*, that the interest should be calculated beginning 30 days after the garnishment judgment and end when the bankruptcy court avoided the transfer. That argument is waived. 155 Ill. 2d R. 341(e)(7).

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

KNECHT, P.J., concurs.

MYERSCOUGH, J., dissenting:

I respectfully dissent. The Champaign County trial court abused its discretion in holding Farmers Merchants in indirect contempt. There is no real dispute over the facts in this case. The trial court entered a turnover order on May 27, 1997, against Farmers Merchants in favor of Busey. On May 30, 1997, the Salyards filed bankruptcy. On November 21, 1987, the Arizona bankruptcy court vacated Busey's judicial lien. The Salyards then received their account balance less $4,500 paid to Farmers Merchants on a car loan. On August 10, 1998, the Champaign County trial court held Farmers Merchant in indirect civil contempt for failing to make payment to Busey as ordered on May 27, 1997.

This court has affirmed the Champaign County trial court finding that (1) a valid turnover order was in effect, (2) Farmers Merchants had possession of the funds, (3) Farmers Merchants was capable of complying with the order, and (4) Farmers Merchants did not comply with the order. However, in this case, there clearly could be no wilful contempt. Farmers Merchants was subject to the bankruptcy stay only three days after entry of the turnover order. That turnover order was still subject to appeal at the time. Any transactions, including judicial liens, occurring within 90 days of the filing of bankruptcy are subject to stay. In fact, once a debtor declares bankruptcy, the debtor is al-

lowed to avoid any judicial lien that impairs any exemption that the debtor is entitled to under state law. 11 U.S.C. § 522(f)(1)(A) (1994).

The majority found that it was not necessary to decide the legal issue—whether the turnover order transferred ownership of the funds to Busey. I agree. Whether ownership was transferred is not determinative of the indirect contempt issue. Even if ownership were transferred by the turnover order to Busey, upon the filing of bankruptcy, the property had to remain in the bankruptcy estate. Given the automatic stay, as well as the subsequent avoidance of the turnover order, Farmers Merchants was never capable of complying with the turnover order without subjecting itself to contempt of the bankruptcy court.

Moreover, the trial court failed to accord full faith and credit to the Arizona bankruptcy court. That bankruptcy court granted the motion to avoid the judgment for turnover of exempt property of the respondent, Busey, and recognized the Salyards' IRA exemption. The Champaign County trial court, however, imposed a sanction for contempt for failure to make payment as required under the avoided turnover order and entered a purge provision that required payment of the full amount of the IRA plus interest. The trial court erred in refusing to grant full faith and credit to the order of the Arizona bankruptcy court.

Additionally, the very complexity of the legal issues herein and the vagaries of bankruptcy law and most especially the issue of ownership vitiate any arguments of indirect contempt. Farmers Merchants took the appropriate actions following the Arizona bankruptcy court's orders. Any complaints that Busey had with the Salyards' statutory exemption should have been raised in the Arizona bankruptcy court.